UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


The H.T. Hackney Co.,                      Case No. 3:19-cv-00353

           Plaintiff,

     v.                                                 MEMORANDUM OPINION
                                                       AND ORDER

NZR Retail of Toledo, Inc., et al.,

           Defendants.


### I. INTRODUCTION

Before me is the motion for summary judgment filed by Plaintiff The H.T. Hackney Co. (Doc. No. 20). Defendants NZR Retail of Toledo, Inc., Naqid Hasan, and Yazeed Qaimari, filed a motion in opposition, (Doc. No. 22), and Plaintiff replied. (Doc. No. 23).

### II. BACKGROUND

Hackney is a wholesale distributor regularly engaged in the business of distributing goods to convenience stores. NZR operates convenience stores. Hasan and Qaimari were the principals of NZR at the time of the events at issue.

In November of 2015, the parties executed a one-page document, the legal status of which is at the crux of much of the present dispute. This document contained three sections, two of which are at issue here: (1) a section entitled "Working Agreement," which represented an agreement between Hackney and NZR; (2) and a section entitled "Individual Personal Guaranty," which represented an agreement between Hackney and both Hasan and Qaimari in their individual

capacities.[1] (Doc. No. 21-1 at 2). Hackney contends these three sections are part of a single agreement, which Hackney refers to as the "Working Agreement." (*see* Doc. No. 1 at 2, Doc. No. 20 at 4-6; Doc. No. 23 at 2). While Defendants sometimes refer to the one-page document in its entirety as the Working Agreement, (*see* Doc. No. 22 at 2), they elsewhere claim that the three sections of the document are "separate and distinct instruments." (Doc. No. 22 at 2; Doc. No. 22 at 6). To avoid any potential confusion, when discussing the one-page document in its entirety, I will refer to it as the November 2015 Agreements. I will use the term Working Agreement only when referring to that particular section of the one-page document.

In the Working Agreement portion of the November 2015 Agreements, NZR, acting through Hasan and Qaimari, agreed "payment to [Hackney] for goods, services, and/or equipment purchased will be due Net Seven (7) Days from the date of delivery/invoice unless otherwise provided in a separate written agreement." (Doc. No. 21-1 at 2). The Working Agreement also provided that if any amount owed to Hackney were to become delinquent and be turned over to a collection agency or attorney for collection, NZR would pay attorney's fees of 25% of the amount due along with all attendant collection costs including fees of the collection agency. (*Id.*).

In the Individual Personal Guaranty, Hasan and Qaimari personally guaranteed to Hackney "payment in full of any and all obligations of [NZR to Hackney] presently owed and/or incurred or coming due in the future." (*Id.*). This section also required Hasan and Qaimari to pay interest, costs, and all expenses, including attorney's fees of 25%, incident to the enforcement and collection of any amounts due under this portion of the agreement.

On January 4, 2016, approximately two months after the parties executed the November 2015 Agreements, Hackney and NZR entered into a "Customer Supply Agreement." (Doc. No. 21-

---

[1] The third section was entitled "Permission to Obtain Consumer Credit Report." In this section, Hasan and Qaimari agreed to allow Hackney to access consumer credit reports in their names. (Doc. No. 21-1 at 2)

2 at 2-4). Under the terms of that agreement, NZR agreed to utilize Hackney as their primary supplier of cigarettes, groceries, and other products offered by Hackney for the next five years, and Hackney would provide NZR with a Service Allowance of $250 per store per quarter along as well as a Quarterly Rebate of 2% on all non-tobacco purchases and 4% on all OTP purchases during the quarter. (*Id.* at 2-3). The Customer Supply Agreement stated it was being "executed in addition to and does not change the terms and conditions as detailed in the Working Agreement between NZR and Hackney." (*Id.* at 3).

In the present suit, Hackney brings claims for breach of contract, promissory estoppel, and unjust enrichment against NZR based on allegations NZR failed to pay for certain goods it purchased and received between November 23, 2018 and January 3, 2019. (Doc. No. 1 at 3-5; Doc. No. 20 at 5). Hackney also brings claims for breach of guaranty and unjust enrichment against Hasan and Qaimari. (Doc. No. 1 at 4-5). In response, NZR raised a counterclaim against Hackney for breach of contract. (Doc. No. 7 at 3-4). Defendants admit that certain amounts are owed to Hackney for goods sold and delivered, but they dispute both the amount owed and who owes it. (Doc. No. 22 at 2-3).

Hackney moved for summary judgment on: (1) its claim for breach of contract against NZR; (2) its claim for breach of guaranty against Hasan and Qaimari; and (3) NZR's counterclaim against Hackney. (Doc. No. 20 at 5).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is

genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. DISCUSSION

### A. Breach of Contract

I start with the breach of contract claim Hackney brings against NZR. To prevail here, Hackney must establish: (1) a contract existed between the parties; (2) NZR failed to perform its obligations under the contract; and (3) damages resulted from the breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018) (further citation omitted). Only the first requirement is at issue here. This is because NZR admits it owes money to Hackney for certain goods sold and delivered, but disputes Hackney's claim that the Working Agreement was the contractual agreement those goods were delivered under.[2] (Doc. No. 22 at 3).

"Unlike the common law, the Ohio Uniform Commercial Code does not require that all essential terms of a contract be definite in order for the contract to be enforceable." *Premier Constr. Co., Inc. v. Maple Glen Apt's. & Townhouses Ltd.*, 159 N.E.3d 1201, 1205 (Ohio Ct. App. 2020) (quoting *Tubelite Co., Inc. v. Original Sign Studio, Inc.*, 891 N.E.2d 820 (Ohio Ct. App. 2008)). "A

---

[2] NZR also claims that because the Working Agreement was not a contract, any breach of contract claim must be based on a breach of the Customer Supply Agreement. And, according to NZR, Hackney has not made any claim in its motion for summary judgment that NZR breached the Customer Supply Agreement. (Doc. No. 22 at 5). But NZR's characterization on this point is not entirely accurate. In its motion for summary judgment, Hackney states that, "[p]ursuant to the terms of Working Agreement [sic] and the Supply Agreement," Hackney sent goods worth $677,148.21 to NZR that NZR never paid for. (Doc. No. 20 at 3). Hackney also argues that NZR's counterclaim must fail because NZR's breach of the Customer Supply Agreement precludes it from bringing an action for breach of contract based on that agreement. Still, because Hackney's arguments in support of its breach of contract claim focus on the Working Agreement, I will decide the breach of contract claim on that basis.

4

contract for sale of goods may be made in any manner sufficient to show agreement." Ohio Rev. Code § 1302.07(A). And "[e]ven though one or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ohio Rev. Code § 1302.07(C).

NZR first claims the Working Agreement is not a contract because it does not provide any term for a business relationship, any specific terms of payment, the types of goods to be sold, any specific events of default, or any allowances, credits, and rebates. (Doc. No. 22 at 3-4). But this argument overlooks the role of the UCC's gap-filling provisions. The only term that cannot be filled by the gap-filling provisions is quantity, but the quantity here is implicit in the first sentence of the Working Agreement. The Working Agreement applies its payment terms to *all* goods, services, and equipment purchased by NZR that is not otherwise provided for in a separate agreement. *See Premier Constr. Co., Inc.*, 159 N.E.3d at 1206 (finding contract existed even though quantity column in price quotation was left blank because quantity was implicit in the writing).

NZR next contends the Working Agreement does not constitute a contract because it lacks consideration. Consideration is a bargained-for legal benefit or detriment. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Here, the Working Agreement satisfies the consideration requirement because it contains a promise by Hackney to sell goods to NZR on credit in exchange for NZR's promise to pay for those goods within certain terms.

Finally, NZR cites to *Rayess v. Educ. Comm'n for Foreign Med. Graduates*, 883 N.E.2d 1267 (Ohio 2012), where the Supreme Court of Ohio held that an informational pamphlet coupled with an executed application cannot constitute a written contractual agreement. But *Rayess* is inapplicable because the writings at issue in that case did not contain any promises by either party, or set forth the rights and duties of the parties in any way. By contrast, the Working Agreement does contain a promise, a promise by Hackney to sell goods on certain credit terms.

Thus, the Working Agreement was an enforceable contract, and because NZR does not dispute that it failed to pay for certain goods delivered under that contract, Hackney is entitled to summary judgment on its breach of contract claim for $677,148.21 against NZR.

### B. Breach of Guaranty

The next issue is whether Hackney is entitled to summary judgment on the breach of guaranty claim it asserts against Hasan and Qaimari.

"A personal guaranty agreement is reviewed under the law of contracts and a reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document." *SMS Fin. 30, LLC v. Frederick D. Harris, M.D., Inc.*, 112 N.E.3d 395, 403 (Ohio Ct. App. 2018) (further citation omitted). Like other contracts, a guaranty must be supported by consideration, but "the benefit of the consideration need not accrue to the promisor." *FPC Fin. v. Wood*, 2007-Ohio-1098, 2007 WL 731428, at *2 (Ohio Ct. App. 2007) (citing Restatement (Second) of Contracts, § 71(4)). And "consideration which supports the underlying agreement is sufficient to bind the guarantor." *Medina Supply Co. v. Corrado*, 689 N.E.2d 600, 605 (Ohio Ct. App. 1996).

Hasan and Qaimari first contend they cannot be liable for breach of guaranty because there is no contract to guarantee. (Doc. No. 22 at 7). But this argument relies on their argument that the Working Agreement is not a contract, and I have already explained why that position is incorrect. And even if Hasan and Qaimari believed the guaranty was "a mere recital of what might take place if a formal agreement was entered into," (*id.*), their unilateral mistake about the nature of the instrument they executed would not excuse them from performing their obligations under it. *Amerisourcebergen Drug Corp. v. Hallmark Pharm., Inc.,* 2006-Ohio-2746, 2006 WL 1495073, at *3 (Ohio Ct. App. 2006) (quoting *Campco Distribs. Inc. v. Fries*, 537 N.E.2d 661 (Ohio Ct. App. 1987)) ("A

6

unilateral mistake by a guarantor as to the nature of his obligation may not relieve him from his guaranty contract.").

Hasan and Qaimari next argue that the November 2015 Agreements was actually three separate and distinct instruments, and that before any of these instruments could be binding contracts, they had to be incorporated into the Customer Supply Agreement. (Doc. No. 22 at 7). But even if Defendants are correct that the Individual Personal Guaranty is its own instrument, distinct from the other two contained in that same one-page document, Defendants' argument fails because the Individual Personal Guaranty still is a binding contract. The consideration supporting the guaranty is Hasan and Qaimari promising to guarantee payment for any and all of NZR's obligations to Hackney, whether presently owed or coming due in the future, in exchange for Hackney extending credit at their request.

Because the Individual Personal Guaranty created a binding obligation on the part of Hasan and Qaimari to be jointly and severally liable for any amounts owed by NZR to Hackney, and neither Hasan nor Qaimari have fulfilled that obligation, Hackney is entitled to summary judgment on its breach of guaranty claims against Hasan and Qaimari. Hasan and Qaimari are jointly and severally liable to Hackney for the same measure of damages as NZR.

### C. NZR's Counterclaim

Hackney also seeks summary judgment on NZR's counterclaim. NZR's counterclaim seeks: (1) $117,000 it claims it is entitled to for rebates due under the Customer Supply Agreement; and (2) $25,000 in credits on outdated merchandise which NZR has had to replace at additional cost. (Doc. No. 7 at 3-4).

*1. Rebates*

The Customer Supply Agreement provides for "$250 per store per quarter" in Service Allowances to be paid by Hackney to NZR. (Doc. No. 21-2 at 2). But it also states that "[a]ll

7

allowances and rebates due from H.T Hackney to NZR are contingent on timely payment under the terms outlined here." (*Id.*) These terms included payment by NZR to Hackney "via EFT (ACH) initiated by Hackney on Thursday the week following delivery (6-11 days after date of invoice)." *Id.*

Hackney argues summary judgment is appropriate on NZR's counterclaim for rebates because NZR did not make timely payment. (Doc. No. 20 at 7). NZR contends there is a genuine dispute of material fact as to whether or not it failed to make timely payment of invoices. But it presents no evidence to refute Hackney's claim, supported by testimony from its Corporate Credit Manager, Tim Rowe, that NZR owes $677,148.21 for goods ordered and accepted by NZR between November 2018 and January 2019. NZR claims it was not credited for a $10,000 check it directed to Hackney on February 2, 2019, but even if that were true, NZR still would have failed to make timely payment on a significant majority of the goods it purchased. Further, Hackney has submitted testimony from Rowe in a supplemental affidavit which states that Hackney did credit NZR for the $10,000 check, and NZR has not submitted any evidence to the contrary.

2. *Credits*

In its opposition to summary judgment, NZR contends that not all of the payments it seeks under the Customer Supply Agreement are subject to the condition of timely payments. Specifically, NZR seeks to recover $25,000 in credits for outdated merchandise. But here, NZR's claim fails because it failed to give Hackney the requisite notice that any goods were outdated.

Ohio law provides that where a tender has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Ohio Rev. Code § 1302.65(C)(1). A tender is accepted for these purposes when the buyer fails to make a timely rejection as required by Ohio Revised Code § 1302.61. The notice required by § 1302.65(C)(1) must be both adequate in content and reasonably timely. *Lincoln Elec. Co. v. Technitrol, Inc.*, 718 F. Supp. 2d 876, 881-84 (N.D. Ohio 2010).

8

Here, NZR's notice failed both requirements. First, NZR presents no evidence that it informed Hackney that any goods were deficient, or that it considered Hackney in breach of their contract, prior to the filing of the counterclaim itself. While Ohio does not have a per se rule requiring pre-suit notice of a breach, Ohio courts and federal courts applying Ohio law have consistently held that a buyer must notify the seller of the breach prior to litigation. *Id.* (collecting cases). Further, the content of the notice here is deficient because neither the counterclaim nor NZR's opposition to summary judgment provide any information about which goods it claims were outdated or otherwise deficient. Because NZR failed to comply with § 1302.65(C)(1), it is barred from pursuing any remedy, including the credits it seeks here, for outdated merchandise.

**D. Damages**

Hackney has established it is entitled to summary judgment—at least at to the question of liability—on its claims for breach of contract and breach of guaranty. Because Defendants do not present any credible evidence to dispute Hackney's damage calculations, Hackney is entitled to $677,148.21 in damages for the goods it delivered to NZR under the contract but never received payment for. But there are still two remaining issues with regard to damages.

1. *Attorney's Fees*

First, Hackney seeks to recover attorney's fees in both of these claims.[3] (*see* Doc. No. 1 at 3-4; Doc. No. 20 at 5); *see also Huntington Nat'l Bank v. Stanley Miller Constr. Co.*, 2015-Ohio-1534, 2015 WL 1851164, at *3 (Ohio Ct. App. 2015) ("Courts have concluded that a request for attorneys' fees

---

[3] The question of attorney's fees is somewhat complicated because Hackney has not explicitly requested any particular dollar amount of attorney's fees. In its complaint, it requested "reasonable attorney's fees" as a component of the damages it seeks for the breach of contract and breach of guaranty claims it asserts. (Doc. No. 1 at 3-4). In the each of the agreements underlying Hackney's claim for breach—the Working Agreement and the Individual Personal Guaranty—there are provisions providing for payment of attorney's fees and other costs in an amount equal to 25% of the amount owed in the event that NZR fails to make payment to Hackney. (Doc. No. 21-1 at 2). The following analysis assumes that Hackney is seeking to recover payment of 25% of the amount owed, but it does not preclude Hackney from requesting a different amount going forward.

set forth in the complaint's prayer for relief should not be considered a separate and distinct claim.") (further citation omitted).

Ohio follows the "American rule" with respect to the recovery of attorney's fees, meaning that, generally speaking, a prevailing party is not allowed to recover attorney's fees as a part of the costs of litigation. *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009). The Supreme Court of Ohio has recognized exceptions to this rule, one of which is when there is an enforceable contract that specifically provides for the losing party to pay the prevailing party's attorney's fees. *Id.* This exception is itself limited by other rules from Ohio's common law, though those limitations are not at issue in this case.

Defendants appear to argue that Ohio Revised Code § 1319.02 limits the attorney's fees Hackney can recover here. (Doc. No. 22 at 6). In response, Hackney contends that contracts that do not immediately create a debt at the time of execution are not subject to § 1319.02. (Doc. No. 23 at 6) (citing *2-J Supply, Inc. v. Garrett & Parker, L.L.C.*, 2015-Ohio-2757, 2015 WL 4113330, at *4 (Ohio Ct. App. 2015)). While Hackney does find some support for its position, it overlooks that even if § 1319.02 does not apply, the attorney's fees would still be limited to an amount that is "fair, reasonable, and just as determined by the trial court upon full consideration of all of the circumstances of the case." *Wilborn*, 906 N.E.2d at 401 (further citation omitted); *see also Columbus Check Cashers, Inc. v. Rodgers*, 2008-Ohio-5498, 2008 WL 4684781 at *5 (Ohio Ct. App. 2008) ("As a general matter, a party seeking an award of attorney fees bears the burden of proving the reasonableness of those fees. This burden of proof must be met regardless of an agreement to pay attorney fees.") (internal citations omitted). I conclude Hackney is entitled to reasonable attorney's fees under the contract. Hackney shall submit further information substantiating the amount of its request for attorney's fees within 14 days of the date of this Memorandum Opinion and Order. Defendants may file a brief in response within 7 days of the date of that filing.

*2. Service Charges*

Second, Hackney seeks to recover interest on the $677,148.21 it is owed at a rate of 18% annually. Defendants do not address this issue in their briefing.

Section 1343.03(A) of the Ohio Revised Code establishes interest rates for both prejudgment and post-judgment interest. *John Soliday Fin. Group, LLC v. Stutzman*, 2009-Ohio-2081, 2009 WL 1176750, at *1 (Ohio Ct. App. 2009). It provides for interest at a rate to be determined by § 5703.47, "unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." Ohio Rev. Code § 1343.03(A). "Therefore, a judgment creditor is entitled to a contractual interest rate instead of the statutory rate 'when (1) the parties have a written contract, and (2) that contract provides a rate of interest with respect to money that becomes due and payable.'" *Stutzman*, 2009 WL 1176750 at *2 (quoting *First Bank of Ohio v. Wigfield*, 2008-Ohio1278, 2008 WL 747742, at *5 (Ohio Ct. App. 2008)).

Hackney fulfills both of these requirements here. The Working Agreement provided for interest in the form of "[a] service charge of 1.5% per month," or 18% annually. Thus, Hackney is entitled to interest on amount due at 18% annually. Based upon the record before me, I conclude the claim for the entire $677,148.21 accrued on January 18, 2019. Interest will be awarded from that date until the payment of the judgment. *See* (Doc. No. 21-3); *see also Keller & Kehoe, L.L.P. v. Smart Media of Delaware, Inc.*, 2016-Ohio-5409, 2016 WL 4399563, at *7-8 (Ohio Ct. App. 2016).

V. CONCLUSION

For the foregoing reasons, Hackney's motion for summary judgment is granted in part. Hackney is awarded judgment against NZR in the amount of $677,148.21, plus 18% annual interest from January 18, 2019 until the payment of the judgment. Hackney is awarded judgment on its breach of guaranty claims against Hasan and Qaimari, who are jointly and severally liable to Hackney

11

for this same amount. NZR's counterclaim is dismissed. Hackney shall submit further information substantiating the amount of its request for attorney's fees within 14 days of the date of this Memorandum Opinion and Order. Defendants may file a brief in response within 7 days of the date of that filing.

    So Ordered.

                                                    s/ Jeffrey J. Helmick
                                                    United States District Judge